1
2
3
4
5              IN THE UNITED STATES DISTRICT COURT
6           FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8  CLEMENT BROWN,         )   No. C 05-3139 JSW (PR)
9          Petitioner,     )
10   vs.               )

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

11  JILL BROWN, Warden, San Quentin
    State Prison,
12
          Respondent.
13
14

## INTRODUCTION

Petitioner, a prisoner of the State of California, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms ("BPT") denial of parole during parole suitability proceedings in 2004.  This Court ordered Respondent to show cause why a writ should not issue.  Respondent filed an answer, memorandum and exhibits in support thereof.  Petitioner has filed a traverse.  For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

In 1985, in Orange County Superior Court, Petitioner was convicted of first degree murder, robbery and burglary.  The trial court sentenced him to a term of twenty-six years-to-life in state prison.  Petitioner's minimum parole eligibility date was March 9, 2002.

In this habeas action, Petitioner does not challenge his conviction or sentence, but instead alleges that his due process rights were violated by the denial of parole during a

parole suitability hearing in December 2004. At the parole hearing, Petitioner appeared

with counsel before a BPT panel. The Board relied, in part, upon the following account

of Petitioner's commitment offense, as set forth in the probation officer's report:

> According to the reports of the Huntington Beach Police, at approximately 8:15 p.m. on February 6, 1985, the three defendants (Clement Brown, Tutuila Tuvala, and Lisa Mondragon) went to the apartment of Steven Fritchell in Huntington Beach. Ms. Mondragon was known to Mr. Fritchell as the girlfriend or former girlfriend of Richard Duran, who had lived for a time with Mr. Fritchell. Witnesses told police that she (Mondragon) was admitted to the apartment after identifying herself, and was followed in by Brown and Tuvalu, with Brown carrying a sawed-off shotgun. Several other persons were present in the apartment.
>
> The defendants ordered the other persons to lie on the floor, and took their personal property including wallets. Mr. Fritchell was able to grab the shotgun and a fight ensued. During the fight, defendant Brown and the deceased victim (William Gorman) struggled for the possession of a butcher knife that apparently had been in the kitchen of the apartment. In the struggle, the deceased victim was stabbed twice in the chest and [the] point of the knife broke off in his skull. Mr. Fritchell received a severe cut to his arm, and other persons present also received minor injuries during the fight, in which there were numerous participants. The defendants then fled the scene in the defendant's automobile. The victims reported the loss of $700 in money and some small quantities of cocaine.
>
> . . .
>
> The police were able to identify the defendants by contacting Richard Duran. He believed that Lisa Mondragon's current boyfriend was Clement Brown, who had the nickname of "Roscoe" because he was in the habit of carrying a .45 caliber automatic pistol. Mr. Duran stated that Mr. Brown is a very violent person, who had threatened to kill him after they became involved in a fight over Mondragon last New Year's Eve. Duran further said Brown was in the habit of carrying a loaded shotgun in his car, and had shot at moving vehicles throughout Orange County on several occasions, doing this "just for kicks." Mr. Duran described the shotgun, and it was noted to be the same type as was reported to have been used at the scene of the robbery and murder.

(Resp. Ex. 5 at 4-7, Ex. 3 at 9-10.) At the parole hearing, Petitioner stated that this

factual account was correct, and that the motive for the crime was to steal cocaine from

the victims. (*Id.* at 9-12.) At the hearing, Petitioner also admitted that he had shot at

other cars while he was driving, but that no one was in those cars. (*Id.* at 51.)

The BPT found that Petitioner was not suitable for parole and would pose an

unreasonable risk of danger to society or a threat to public safety. The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's commitment offense, his prior criminal and social history, his programming and behavior in prison, and the Orange County District Attorney's opposition to parole. Petitioner challenged the BPT's decision in the state superior, appellate and supreme courts. The Orange County Superior Court was the only state court to issue a reasoned opinion denying Petitioner's claims. After the California Court of Appeal and the California Supreme Court summarily denied his habeas petitions, Petitioner filed the instant federal petition for a writ of habeas corpus. The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition.

**DISCUSSION**

A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will

not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.    Legal Claims and Analysis

Petitioner claims that the BPT's denial of parole in 2004 violated his right to due process because the decision was not supported by sufficient evidence.

1.    The BPT Decision

California's parole scheme provides that the BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).  In making this determination, the BPT considers various factors, including the prisoner's social history, the commitment offense and prior criminal history, and his behavior before, during and after the crime.  *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

The record shows that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided a reasoned decision denying parole.  The panel concluded that Petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public

safety if released from prison." (Resp. Ex. 3 at 66.)  The panel explained that it found that the commitment offense was a home-invasion robbery, that it was "calculated," that Petitioner caused the victim to die in "a horrible way," and that there were multiple victims. (*Id.* at 66-67.)  The panel also found the motive for the crime – to steal drugs – to be very trivial in comparison with the gravity of the offense. (*Id.*)  The panel further considered Petitioner's criminal history of prior arrests for possession of a firebomb and theft, and found that he had an unstable social history of carrying a loaded weapon in his car, and abusing alcohol. (*Id.* at 13-15, 18-20, 67.)

The panel further found that Petitioner had not behaved well in prison insofar as he had three serious rules violations while in prison for using "force and violence" in 1990, and engaging in mutual combat and participating in a riot in 1997. (*Id.* at 67.) Petitioner also had not completed a vocational training program in prison, and had only recently begun Alcoholics Anonymous. (*Id.* at 25, 28-29, 67-68.)  Petitioner's most recent psychiatric evaluation was very supportive, but it was three years old, and Petitioner's prior evaluation had been contradictory. (*Id.* at 67-68, 70.)  Lastly, the panel noted the prosecutor's opposition to release. (*Id.* at 68.)

     2.    The State Court Decisions

The state superior court found that the panel's denial of parole was supported by the evidence in the record. (Resp. Ex. 7.)  Specifically, the court cited the circumstances of the murder, Petitioner's unstable social history, his insufficient participation in vocational and substance abuse programs at the prison, and the District Attorney's opposition. (*Id.*)  The California Court of Appeal and the California Supreme Court summarily denied Petitioner's habeas petitions. (Resp. Exs. 9, 11.)

     3.    The Federal Right to Due Process

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections.

*Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128). Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

The state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

The evidence before the BPT indicated that Petitioner continued to pose an unreasonable risk of danger to society. To begin with, Petitioner murdered a victim during a home invasion style robbery, which had clearly been planned in advance. There

were multiple victims of the offense, and the deceased clearly suffered before death insofar as Petitioner stabbed him twice in the chest once in the skull while they struggled for control of a butcher knife.  This evidence indicates that Petitioner murdered the victim in an especially cruel manner, and with callous disregard for the victim's suffering.  In addition, Petitioner committed the murder for trivial reasons, namely to steal drugs.  There was also evidence of Petitioner's unstable social history insofar as he had a history of alcohol abuse and criminal conduct.  Moreover, while in prison Petitioner had been disciplined for serious and violent misconduct on several occasions, including fighting and participating in a riot; Petitioner had also not completed vocational and substance abuse training.[1]  Such evidence amounts to "some evidence" in support of the BPT's determination that Petitioner continued to present a risk of danger if released to the public, and consequently that Petitioner was not suitable for parole.

The Ninth Circuit has noted that "over time" the BPT's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." *Biggs*, 334 F.3d at 916.  However, in this case although the Board's denial of parole may have been in part based upon Petitioner's commitment offense, there were numerous other reasons for their denial of parole as well.  In any event, the challenged parole denial here took place at petitioner's fourth parole hearing after he had served 19 years in prison, far less than the minimum term (26 years) of his sentence.  Thus, the parole denial in this case does not yet implicate the concerns raised in *Biggs*.  *See, e.g., Irons*, 479 F.3d at 661

_____

[1]Petitioner's claim that consideration of his need for substance abuse therapy violates the Americans With Disabilities Act ("ADA") is without merit.  *See Thompson v. Davis*, 295 F.3d 890, 898-99) (parole board may take into account disability in determining whether particular individual presents risk of future dangerousness).  Similarly, his argument that the factors relied upon by the BPT in denying parole are unconstitutionally vague also fails, as the Ninth Circuit has routinely relied upon such factors in upholding parole denials.  *See, e.g., Biggs*, 334 F.3d at 916; *Sass*, 461 F.3d at 1129; *McQuillion*, 306 F.3d at 902-03.

(upholding reliance upon commitment offense to deny parole at fifth parole hearing after petitioner had served 16 years in prison); *Sass*, 461 F.3d at 1129 (same, for second and third parole hearings after petitioner had served 11 and 12 years in prison). Thus, not enough time had elapsed for the BPT's reliance on the commitment offense to raise the due process concerns discussed in *Biggs*.

Petitioner argues that the denial of parole violates California Penal Code § 3041. Such arguments are based on state law, and as such do not set forth a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). To the extent Petitioner is contending that the state law creates a liberty interest protected by the federal right to due process, for the reasons discussed above, the denial of parole in this case adhered to the guarantees of due process, including the "some evidence" requirement.

The Court further notes that the California Supreme Court has rejected Petitioner's argument that BPT was required to compare his sentence with the sentences of other inmates under the matrices set forth in the applicable regulations; as a matter of state law, the BPT must find suitability for parole prior to any such comparison. *In re Dannenberg*, 34 Cal. 4th 1061, 1082-83 (2005). Such a determination of state law is binding on this Court. There is certainly no basis for finding that the denial of parole in his 19th year in prison amounted a punishment disproportionate to the crime of first-degree murder and robbery under the Eighth Amendment. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 439 (9th Cir. 2007) (upholding sentence of 25-years-to-life for the underlying offense of petty theft with a prior conviction); *Harris v. Wright*, 93 F.3d 581, 584 (9th Cir. 1996) (sentence of life without parole for 15-year-old murderer does not raise inference of gross disproportionality).

Based upon the record in this case, the state courts' determination that there was

some reliable evidence to support the BPT's decision, and that Petitioner's right to due process was not violated, was not contrary to or an unreasonable application of federal law. *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).  Accordingly, habeas relief is not warranted on this claim.

### CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  June 18, 2008

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

BROWN,

              Plaintiff,

    v.

BOARD OF PRISON TERMS et al,

              Defendant.

_____/

Case Number: CV05-03139 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 18, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Clement Brown
CSATF State Prison
D19013
P.O. Box 5248
Corcoran, CA 93212

Dated: June 18, 2008

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk